Dear Ms. Youngblood:
This office is in receipt of your request for an opinion of the Attorney General in regard to problems encountered with the Town's police department. You indicate because of continuing problems the Mayor and Town Council ask for an opinion as to the legality of the following course of action:
 To provide in its annual budget and/or amend its annual budget to provide for the following;
 Include funds in the budget to pay a salary for the elected chief of police only, with no fringe benefits budgeted such as an automobile, insurance, etc.; and,
 Use the other funds normally budgeted for the town police department to enter into a contract with the Sheriff of Grant Parish to provide police protection for the town.
It is well recognized that the compensation of an elected public official cannot be reduced during the term for which he is elected, Art. X, Sec., 23 La. Const., R.S. 33:404.1. Additionally, this office has concluded that the payment of hospitalization insurance premiums is "compensation" and, therefore, may not be reduced during the term for which elected, Atty. Gen. Op. Nos. 97-234, 96-380, 92-546, 91-314. Also, it is our understanding that gross income includes compensation of fringe benefits, and examples of fringe benefits are "an employer-provided automobile", 26 C.F.R. Sec. 1.61-2T. Whether the automobile is a taxable fringe benefit or a fringe benefit excluded from income would be a factual determination under the tax law, but, any taxable fringe benefit could not be terminated during the elected official's term of office.
Except for the items considered compensation of an elected official which cannot be reduced during the term of office being served, the funds of the police department are subject to an amended budget conducted in accordance with R.S. 39:1309 and R.S.42:4.1 et seq.
This office has recognized the inherent authority of the elected chief of police to control the police department and funds that have been budgeted and appropriated, but said funds must first be budgeted and appropriated pursuant to a municipal ordinance to fall within control of the chief of police. As observed in Atty. Gen. Op. No. 93-666, the authority to adopt and amend the budget is vested exclusively with the Mayor and Board of Aldermen. Thus, in the event a budget amendment is proposed and adopted pursuant to R.S. 39:1309-1310, the Mayor and Board of Aldermen may decrease the funds originally budgeted to the police department. This budget amendment would entail public hearings in an open meetings before such a cut could be made.
However, in Atty. Gen. Op. No. 97-484 it was concluded the mayor and aldermen may not by budgetary decisions preempt the authority of the chief of police in favor of another law enforcement agency in the parish, and the sheriff may not limit the authority or responsibility of the chief of police to enforce town ordinances and state laws within the boundaries of the municipality. This office concluded as follows:
 If there is existing municipal law enforcement capable of performing adequate law enforcement for the town then the mayor and aldermen must fund it within their ability to do so. They cannot refuse to fund the chief of police in order to reserve those funds for a contract with the sheriff. If no adequate law enforcement exists in the town the mayor and aldermen have a duty to the people to do all they can within the law to provide those services, which could, conceivably, include a contract with the sheriff. The chief of police has primary responsibility for law enforcement within the municipality and that cannot be usurped by the sheriff.
You state there have been continuing problems with the police department, and this office recognized in Atty. Gen. Op. No. 90-211 that a town may enter into a contract for a sheriff to perform law enforcement within the town. It was pointed out inasmuch as the Town of Plain Dealing operated under a special charter calling for the elected position of marshal, it would be necessary to amend the charter to eliminate the position of marshal.
In connection with the obligation of the mayor and aldermen to the people to do all they can within the law to provide adequate law enforcement, we find it pertinent to point out that R.S.33:381.1 sets forth the procedure to authorize the mayor to appoint a marshal or chief of police with approval of the board of aldermen in lieu of an elected chief of police, and provides as follows:
 The marshal who is the chief of police in such municipalities shall be elected at large, provided that, notwithstanding any other provisions of law to the contrary, a majority of the qualified electors voting therein may, at a special election called by the board of aldermen for that purpose, authorize the mayor to thereafter appoint a marshal with the approval of the board of aldermen. Such an election shall be called only upon the presentation of a petition, directed to the board of aldermen and signed by at least twenty-five percent of the qualified electors of the municipality. Once such an election has been called and held, no further or other election on the same question shall be held for at least four years.
 If the people of any municipality vote to authorize the mayor to appoint the marshal, the first such appointment shall be made at the end of the term of the marshal in office at the time the election was held unless at that time the office of marshal is vacant or the incumbent is an appointed official.
 Upon the expiration of at least four years after the effective date of any such determination that the marshal shall be an appointed rather than an elected official the people of any such municipality may determine that said official shall be elective, but only in the same manner and through the same petition and election procedure as hereinabove set forth.
Therefore, a municipality may enter into an intergovernmental agreement for a sheriff to perform law enforcement services within the municipality with an elected chief of police without the cooperation of the chief of police, but both the mayor and the board of aldermen would have to concur in the contract with the mayor signing the same on behalf of the municipality. Atty. Gen. Op. No. 93-283. Moreover, if the town has the funds to allow the chief of police to operate, this office has stated there is no legal justification for bringing the sheriff in to share in the law enforcement duties. However, if the funds are limited and the chief of police is not capable of sufficient law enforcement, we feel the mayor and board of aldermen have the duty to seek sufficient law enforcement, and if necessary may have to make budgetary amendments. If such steps are necessary is a question of fact that we cannot answer.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: Date Released: